NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DAVID BERG, et al., *Plaintiffs/Appellants/Cross Appellees*,

*v.*

WEISS & MOY PC, et al., *Defendants/Appellees/Cross Appellants*.

No. 1 CA-CV 18-0692
FILED 4-30-2020

Appeal from the Superior Court in Maricopa County
No. CV2013-015419
The Honorable Daniel J. Kiley, Judge

**AFFIRMED**

COUNSEL

Sherrets Bruno & Vogt LLC, Scottsdale
By Jason M. Bruno, Jared C. Olson
*Counsel for Plaintiffs/Appellants/Cross Appellees*

Broening Oberg Woods & Wilson, P.C., Phoenix
By Alicyn M. Freeman, Robert T. Sullivan, Tyler M. Abrahams, Alice Jones
*Counsel for Defendants/Appellees/Cross Appellants*

## MEMORANDUM DECISION

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge David B. Gass joined.

**W I N T H R O P**, Judge:

¶1            David Berg and Vintner Group, L.L.C. ("Vintner") (collectively, "Plaintiffs") and their counsel, Jason Bruno, appeal the superior court's monetary sanctions and dismissal with prejudice of Plaintiffs' lawsuit for professional negligence against attorney Mark Weiss and Weiss & Moy, P.C. (collectively, "Defendants"). The superior court imposed monetary sanctions and dismissed the case because of Plaintiffs' repeated flouting of their discovery obligations and deliberate spoliation of evidence, and the court's conclusion that lesser sanctions would be inadequate to remedy the prejudice caused by Plaintiffs' misconduct. The court also concluded Bruno had personally engaged in misconduct and breached his ethical duties, warranting the imposition of a monetary sanction against him. Because the superior court's decisions are fully supported by the record and the forensic investigation conducted in this case, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2            This litigation arises out of the failure of Tstix, L.L.C. ("Tstix"), a company created to market a new product called Tstix, a perforated stick package for producing beverages such as tea and coffee without the need of a bag, string, or spoon. In 2011, Weiss prepared a draft of Tstix' operating agreement. At inception, Vintner, a company majority-owned by Berg's family trust, owned fifty percent of the company; MAAD Hunter Venture Capital Group, Inc., which was owned by Tstix' sole investor, Michael Erinakes, owned thirty percent; and Geoffrey Stuart, the product's inventor, owned twenty percent. Berg was named Tstix' manager.

¶3            In November 2011, Berg decided to transfer Vintner's fifty percent interest in Tstix to Vintner's individual members. At Berg's request, Weiss prepared a draft email on Berg's behalf to the Vintner members explaining the transfer. Before sending the email to Vintner's members, however, Berg deleted language from the draft regarding the need to obtain consent for the transfer from Tstix' other members, Erinakes

and Stuart. Berg then completed the transfer without obtaining Erinakes' and Stuart's consent.[1]

¶4　　　　By May 2012, Erinakes and Stuart were dissatisfied with Berg's management of Tstix. Tstix had no revenue, no salable inventory, no proven manufacturing capacity, and no source of capital besides Erinakes. Further, Erinakes and Stuart suspected Berg had misappropriated company funds.

¶5　　　　In consolidated cases, Erinakes and Stuart each sued Berg and Vintner in Nevada ("the Nevada Litigation"). At the time, neither Erinakes nor Stuart knew of the previous unconsented-to transfer.

¶6　　　　In August 2012, Berg and Vintner filed a counterclaim that, for the first time, disclosed the transfer to Erinakes and Stuart. Erinakes and Stuart brought the transfer and the operating agreement's consent requirement to the Nevada court's attention. Erinakes and Stuart also voted to remove Berg as manager and brought a preliminary injunction to enforce their vote and force Berg to return company funds he had withdrawn.

¶7　　　　The Nevada court granted the preliminary injunction to remove Berg as manager and ordered Berg to turn over to Erinakes everything related to Tstix, including Berg's company laptop ("the Erinakes laptop"). On September 5, 2012, Berg turned over the laptop to Erinakes.

¶8　　　　On September 7, 2012, Weiss signed a declaration on behalf of Berg, stating that in Weiss' opinion, Berg did not need to obtain the approval of Erinakes and Stuart before making the transfer.

¶9　　　　A few weeks later, the parties settled the Nevada Litigation. All Vintner members except Berg maintained their pro rata share of Tstix;

---

[1]　　　　According to Tstix' operating agreement, an interest transferred without unanimous consent from Tstix members becomes an economic interest only. When Berg failed to obtain consent to the transfer, he caused Vintner members to have an interest in Tstix with no management or voting authority. Approximately three weeks before the transfer, another attorney informed Berg that the operating agreement "requires unanimous [m]ember consent to any transfers of LLC interests." The parties dispute whether Weiss properly and adequately advised Plaintiffs of the need for consent from Erinakes and Stuart. Plaintiffs allege Weiss' failure to provide proper advice coupled with his active participation in the transfer documents breached his fiduciary duties to Berg and Vintner.

much of Berg's family trust's interest in Tstix was transferred to Erinakes and Stuart, reducing that interest from 42.6 percent to 7 percent.

**¶10**        In November 2013, Berg and Vintner (Plaintiffs) sued Defendants, alleging Weiss failed to adequately advise Berg about obtaining consent for the transfer from Erinakes and Stuart.  Berg sought damages for lost salary as manager of Tstix, and Vintner sought damages for the value of the loss of membership interests.

**¶11**        During the litigation, Defendants began to suspect Plaintiffs had not disclosed all relevant and discoverable emails in Berg's possession, especially when Defendants, through other discovery methods, obtained hundreds of emails from third parties that had been sent or received by Berg that Plaintiffs had never disclosed.  Defendants confronted Plaintiffs about the apparent lack of disclosure, but Plaintiffs denied having anything more to disclose.

**¶12**        In October 2015, the superior court granted Defendants' request for a forensic expert, Karl Epps, to investigate Berg's email accounts and current computer.  Per the court's order, Epps' investigation would search only for the word "Tstix" across six web-based email accounts possessed by Berg and his wife, who had been the bookkeeper for Tstix, and would search Berg's current computer hard drive for "Tstix" and other relevant names.  Epps would give the search results only to Plaintiffs, who would disclose the results to Defendants after reviewing the results and preparing a privilege log.

**¶13**        The parties continuously disagreed about the scope and parameters of the Epps investigation, and Plaintiffs tried to stop or limit it several times.  When Bruno received the final results from the Epps investigation, Plaintiffs refused to disclose those results until Defendants moved to compel production.  Plaintiffs provided further disclosure, but even then, Defendants argued Plaintiffs' disclosure was incomplete.

**¶14**        Meanwhile, in January 2016, the court appointed a discovery master, who later held a two-day evidentiary hearing regarding the forensic investigation.  Over the course of that hearing, Defendants asked Berg to explain the numerous relevant emails he failed to disclose, but he could not offer any supportable explanation for that failure.

**¶15**        The Epps investigation revealed that Plaintiffs had concealed significant material evidence.  Epps found 2,011 non-privileged emails on Berg's and his wife's email accounts containing the word "Tstix," but Plaintiffs had only disclosed 133 emails from those accounts.  Many of the

emails were relevant to issues such as causation and Plaintiffs' claims for damages. Epps also found relevant undisclosed documents on Berg's current computer hard drive.

¶16        Throughout the forensic investigation, Berg and Bruno maintained that Berg no longer had access to his email account, dberg@Tstix.com, the primary email account for Tstix business, or any other Tstix documents because he had turned over his Tstix laptop (the Erinakes laptop) to Erinakes on September 5, 2012. However, Epps found thirty-five hard drive or .msg (Microsoft Outlook) files from dberg@Tstix.com on Berg's current laptop. Further, Berg had inexplicably supplied Bruno's assistant with several dberg@Tstix.com emails in electronic format, and had sent an email dated October 4, 2012, from the dberg@Tstix.com email account, indicating Berg had access to that account after September 5, 2012.

¶17        Additionally, Plaintiffs had previously disclosed emails from dberg@bigideagroup.com and bigideaman@gmail.com, including emails that contained the word "Tstix." When Epps searched those two email accounts, however, he found no results for the word "Tstix," indicating Berg had deleted relevant evidence from those email accounts during the litigation with Defendants.

¶18        In February 2016, Defendants obtained the laptop that Berg had previously turned over to Erinakes (the Erinakes laptop) during the Nevada Litigation on September 5, 2012. Berg initially testified he had made a single hard drive copy of the emails from the Erinakes laptop, but the hard drive crashed, and he threw it away. He also testified he gave the laptop to Erinakes one hundred percent as-is and did nothing to it before turning it over. Because Plaintiffs objected to Epps examining the Erinakes laptop, Defendants hired another forensic computer expert, Kelly Kuchta, to examine it.

¶19        The Erinakes laptop revealed further evidence of concealment and spoliation of evidence. Kuchta examined what had been done to the Erinakes laptop between August 31 and September 5, 2012, the period when Berg said he had sole access to it. Kuchta determined that, during that time, Berg had "hand-select[ed]" which emails to leave on the laptop before turning it over to Erinakes, while deleting others.

¶20        Kuchta also determined that, on August 31, 2012, Berg deleted the hard drive on the Erinakes laptop, which is a MacBook, then partitioned it into two equal segments, putting a Windows PC operating system

(licensed by a company owned by Berg) on the newly created partition. On September 1, 2012, Berg created an Outlook .pst (personal storage table) file to store emails on the newly created partition. Berg then used at least three separate external hard drives to download or upload data onto the Erinakes laptop. Kuchta concluded Berg's actions were "very calculated," designed "to try and hide data," and went well beyond what was necessary to copy the data for his own records.

¶21         After Kuchta testified at the evidentiary hearing before the discovery master, Berg changed his testimony and said he had an undisclosed "IT guy" put a Windows partition on the Erinakes laptop before he turned it over to Erinakes because "Erinakes wasn't a Mac guy."

¶22         Epps concluded Berg had used various means to back up data from the Erinakes laptop, including approximately ten likely external hard drives, and at least six web-based systems for data backup. Further, the same three external hard drives Berg had connected to the Erinakes laptop days before turning it over were likely connected to the laptop Berg was currently using (i.e., Berg moved original Tstix data off the Erinakes laptop and onto his current computer laptop). But Epps and Kuchta could not confirm if this was true because "the OSX files which would contain serial numbers and dates of usage of the USB devices are missing" from Berg's current computer laptop, and "the only reasonable conclusion for the absence of these files was purposeful human intervention, manually or via software, to physically remove the files or disable the files from being created in the first place." Epps described this type of deletion of files as a "common hacking technique."

¶23         In April 2017, Defendants moved for sanctions, including dismissal of the case, under Arizona Rule of Civil Procedure ("Rule") 37 and Arizona Revised Statutes ("A.R.S.") section 12-349. Defendants argued the forensic investigation revealed Plaintiffs had withheld vast amounts of discoverable evidence, and Berg had committed perjury and spoliation of evidence. In June 2017, Plaintiffs moved for sanctions against Defendants pursuant to Rules 37 and 11, alleging Defendants had failed to timely disclose information from the Erinakes laptop and for making "reckless and baseless public accusations in their Motion for Sanctions."

¶24         After further briefing, the superior court held an evidentiary hearing in February 2018, permitting each side three hours to present relevant arguments and evidence. Epps and Kuchta testified consistently with what they had previously reported regarding their findings during the investigation. Berg also testified, but he could not explain multitudes of

inconsistencies between his testimony and the evidence presented by Defendants. When asked by the court what discovery would have to be re-done in light of the new evidence, defense counsel answered that essentially "everything" would have to be re-done, including obtaining new value opinions from the valuation experts and re-deposing them; re-deposing causation experts; preparing new summary judgment motions in light of new evidence; preparing and addressing new *Daubert*[2] motions; and re-deposing the Vintner members (although at least one could not be re-deposed because he had died).

¶25 After taking the matter under advisement, the court denied Plaintiffs' motion for sanctions and granted Defendants' motion for sanctions, including dismissing Plaintiffs' complaint with prejudice and ordering Plaintiffs to pay attorneys' fees, costs, and other expenses incurred in connection with the forensic investigation. The court found Berg's testimony not credible and detailed Plaintiffs' failure to disclose material, relevant documents they had a duty to disclose, highlighting several specific undisclosed emails and documents, before concluding that "many of the undisclosed documents, taken together, could have had a significant impact on the outcome of this case." The court also noted that although Plaintiffs were able to locate and disclose all emails that supported their position, they had not disclosed emails contrary to their position. Further, the court accepted Epps' testimony that Berg could have easily found the web-based emails found by Epps. The court also found that Berg deliberately engaged in the spoliation of relevant evidence by tampering with the Erinakes laptop and deleting emails in at least two of his web-based email accounts. The court also detailed numerous other discovery violations committed by Plaintiffs and concluded Bruno had engaged in misconduct based on his actions involving an expert witness.

¶26 Based on its findings, the court determined Plaintiffs' misconduct warranted "severe sanctions." The court determined lesser sanctions would be inadequate given that re-opening discovery would add tremendous cost and additional delay to an already five-year-old case; preclusion of evidence would only benefit Plaintiffs; and an adverse jury instruction would permit the jury to speculate about the contents of the destroyed evidence. Accordingly, the court dismissed the case with prejudice. The court also ordered Plaintiffs to pay Defendants' reasonable attorneys' and expert fees and other costs and expenses incurred in

---

[2] *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (setting forth a reliability-assessment framework for evaluating the admissibility of expert testimony); *see also* Ariz. R. Evid. 702.

connection with the Epps investigation and imposed a monetary sanction against Bruno for his documented role in the misconduct, including violating Ethical Rule 3.3, Ariz. R. Sup. Ct. 42.[3]

¶27 Plaintiffs moved for a new trial and reconsideration of the ruling, primarily raising the issues now raised on appeal. After responsive briefing on the motion for new trial, the superior court denied both motions.

¶28 Plaintiffs also moved to disqualify the trial judge for allegedly engaging in ex parte communications with Defendants based on entries in Defendants' fee application. The civil presiding judge held oral argument on the motion, took the matter under advisement, and later denied the motion.

¶29 Plaintiffs timely appealed the superior court's judgment, and Defendants timely cross-appealed, challenging a previous ruling by the superior court. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

**ANALYSIS**

¶30 Plaintiffs raise eighteen issues in their opening brief challenging the superior court's orders.

¶31 We review for an abuse of discretion the superior court's imposition of sanctions, including dismissal of a case based on discovery violations, and its ruling on a motion for new trial. *Cal X–Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, 396-97, 410, ¶¶ 66, 113 (App. 2012); *Rivers v. Solley*, 217 Ariz. 528, 530, ¶ 11 (App. 2008). The same standard applies to the superior court's determination of the admissibility of expert testimony, *Felipe v. Theme Tech Corp.*, 235 Ariz. 520, 524, ¶ 10 (App. 2014), and the denial of a motion for change of judge for cause. *Stagecoach Trails MHC, L.L.C. v. City of Benson*, 232 Ariz. 562, 568, ¶ 21 (App. 2013). As for the superior court's interpretation and application of statutes and rules, we apply a *de novo* review. *See Felipe*, 235 Ariz. at 524, ¶ 10; *City of Casa Grande v. Ariz. Water Co.*, 199 Ariz. 547, 555, ¶ 27 (App. 2001) (stating that, with respect to A.R.S. § 12-349(A), we will uphold the superior court's findings of fact unless clearly erroneous, but review *de novo* its application of the statute).

¶32 In our review, we defer to the superior court's explicit and implicit factual findings and will affirm them if supported by reasonable evidence. *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 254, ¶ 10 (2003);

---

[3] As an additional sanction, the superior court referred Bruno to the State Bar of Arizona "for appropriate disciplinary action."

*Lund v. Donahoe*, 227 Ariz. 572, 579, ¶ 19 (App. 2011); *see also Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009) (deferring to the superior court's credibility determinations). We will not substitute our discretion for that of the superior court; instead, we review "whether a judicial mind, in view of the law and circumstances, could have made the ruling without exceeding the bounds of reason." *Marquez v. Ortega*, 231 Ariz. 437, 441, ¶ 14 (App. 2013) (quoting *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 571 (1985)).

¶33            "The sanction of dismissal is warranted only when the court makes an express finding that a party . . . has obstructed discovery, and that the court has considered and rejected lesser sanctions as a penalty." *Wayne Cook Enters. v. Fain Props. Ltd. P'ship*, 196 Ariz. 146, 149, ¶ 12 (App. 1999) (internal citation omitted); *see also Souza v. Fred Carries Contracts, Inc.*, 191 Ariz. 247, 250 (App. 1997) (recognizing that no "bright line" rule exists for when dismissal is warranted in cases of spoliation of evidence, and "sanctions therefor should be decided on a case-by-case basis, considering all relevant factors" (citation omitted)). Although the superior court's discretion is more limited when it dismisses a case for discovery violations than when it employs lesser sanctions, *Wayne Cook Enters.*, 196 Ariz. at 147, ¶ 5 (citation omitted), we may uphold a dismissal when, among other things, a party shows "flagrant bad faith" and "a knowing and callous disregard" of discovery obligations or court orders, *Gulf Homes, Inc. v. Beron*, 141 Ariz. 624, 629 (1984).

¶34            In ruling in favor of Defendants, the superior court issued an exhaustive thirty-six-page minute entry that considered in detail Plaintiffs' failure to disclose relevant documents they had a duty to disclose, Plaintiffs' deliberate spoliation of evidence, Plaintiffs' other discovery violations, Plaintiffs' claims against Defendants, and the court's rationale for imposing the severe sanction of dismissal upon Plaintiffs and monetary sanctions upon Plaintiffs and their counsel, Bruno, for his complicity. Further, the court fully addressed the arguments Plaintiffs made in their motions for reconsideration and for a new trial, issuing a clear minute entry addressing issues raised in the motion for reconsideration and another thorough thirteen-page minute entry addressing issues raised in the motion for new trial. Additionally, the civil presiding judge, after briefing, oral argument, and taking the matter under advisement, issued a clear and concise minute entry correctly addressing and denying Plaintiffs' motion to disqualify the trial judge for allegedly engaging in ex parte communications with Defendants.

¶35            The superior court's rulings, with the exception of immaterial typographical or record citation errors discussed in part by the parties,

clearly identified, fully addressed, and correctly resolved the issues now raised by Plaintiffs on appeal. The court's reliance on the two forensic examination experts, Epps and Kuchta, was neither legal error nor an abuse of discretion, and the experts' affidavits/declarations, related exhibits, and testimony at the February 2018 evidentiary hearing fully support the superior court's rulings. We agree with the superior court that Plaintiffs' flouting of their discovery obligations and their concealment and spoliation of evidence not only required the costly and time-consuming forensic investigation conducted in this case, but also made it impossible to fully and fairly litigate the case on the merits. Under these circumstances, we need not repeat the superior court's comprehensive analysis here; instead, we adopt it. *See State v. Whipple*, 177 Ariz. 272, 274 (App. 1993) (holding that, when the superior court clearly identifies and correctly rules upon each issue raised "in a fashion that will allow any court in the future to understand the resolution[, n]o useful purpose would be served by this court rehashing the [superior] court's correct ruling in [the] written decision"). The superior court did not abuse its discretion because its detailed findings that Plaintiffs intentionally committed discovery abuses and concealed and spoliated evidence are reasonably and overwhelmingly supported by the record, and the court considered and determined that a lesser sanction would not remedy the discovery violations. Moreover, the civil presiding judge did not abuse her discretion in denying Plaintiffs' motion to disqualify the assigned judge based on an allegation that Weiss' counsel inquired from the judge's staff member as to whether the court required Weiss' counsel to provide the transcript of a prior hearing. In that regard, Plaintiffs failed to show that the question to the judge's staff member followed by that staff member's answer in the negative created any probability of unconstitutional bias on the part of the judge. *See Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872 (2009). Accordingly, we affirm the superior court.[4]

---

[4] Because we affirm the superior court's dismissal of the case, we do not address the issue presented in the cross-appeal. Also, we note that on October 31, 2019, Defendants filed a supplemental citation of legal authority and accompanying documentation in this appeal. Plaintiffs then moved to strike the supplemental citation of legal authority. The record fully supports the superior court's findings, rulings, and judgment without consideration of the supplementary materials, and we grant Plaintiffs' motion to strike the supplemental citation of legal authority, but without prejudice to Defendants' ability to revisit the issue upon further proceedings.

**¶36**        Finally, upon compliance with Rule 21, ARCAP, we grant Defendants' request for an award of attorneys' fees and taxable costs for being forced to respond to this frivolous appeal and to discourage similar conduct by Plaintiffs and their counsel in the future. *See* ARCAP 25; A.R.S. § 12-349(A)(1), (F). It was Plaintiffs' intentional misconduct that prevented this case from being adjudicated on the merits; caused substantial delay, fees, and costs; and led the superior court to dismiss the case. That substantial delay and expense is now exacerbated by Plaintiffs presenting eighteen issues on appeal, issues that, on this record, any reasonable attorney would find are without merit.

## CONCLUSION

**¶37**        We affirm the superior court's dismissal of the case, awards of monetary sanctions against Plaintiffs and their counsel, and the resulting judgment. We also award attorneys' fees and taxable costs to Defendants for responding to this frivolous appeal.



AMY M. WOOD • Clerk of the Court
FILED:    AA